*Twenty-first Judicial District.*

# In the Court of Common Pleas of Schuylkill County.

## AUDITORS OF SCHUYLKILL CO. v. COMMISSIONERS.

1. County auditors are clothed with extensive powers, to enable them to correctly audit, adjust, and settle the accounts of the several officers subject to their supervision.

2. When the report of the county auditors has been filed in the proper office, it is final and conclusive, and the auditors have no further power over it.

3. Appeal from the account of the auditors as filed, is the only way in which the action of the court can be invoked.

Opinion of the court delivered February 9, 1874, by

PERSHING, P. J. This is a controversy between the county auditors and county commissioners, and the facts which give rise to it are as follows : The auditors met in pursuance of law, in January last, and proceeded to audit, adjust, and settle the accounts of the county treasurer and county commissioners. Their report was filed in the prothonotary's office, and bears this endorsement : "Auditor's Report, Schuylkill Co., Penna., 1873, Filed 21st Jany., 1874. George A. Herring, Treas." What accounts were embraced in the report appears from the certificate of the auditors at its conclusion. They say : "We, the undersigned, auditors for the county of Schuylkill, respectfully report, that we have audited, adjusted, and settled the accounts of the commissioners and treasurer of said county, and present the foregoing statement as the result of our investigations. * * * In conclusion, we would say that we have had presented to our inspection bills for all orders drawn by the commissioners, except for two, which are fifty dollars each, drawn in favor of Mr. Valentine Benner, one of the board of commissioners, for traveling expenses. The reasons given for their non-production are, that they were either mislaid, or that on account of press of business at the time, were neglected to be made out."

Two days after this report was filed, viz., on the 23d of January, 1874, the auditors issued their subpœna requiring the commissioners and their clerk to appear before them, on the 26th day of January, 1874, to testify their knowledge in the matter of auditing the accounts of the commissioners of Schuylkill county, for the year 1873, and to produce all the books, papers, and vouchers, showing the expenditure of the commissioners of Schuylkill county, for the year 1873. The commissioners refused to obey the commands of the subpœna, whereupon an attachment was issued by the auditors. This proceeding is now before us by consent, as though writs of habeas corpus had issued at the instance of the parties attached, the commissioners and their clerk.

It is claimed by the auditors, through their counsel, that the heading of their report shows a settlement of the accounts of the county treasurer alone ; that they have not audited the accounts of the commissioners, and that their proceedings in the matter are regular and legal. It is contended

by the counsel for the commissioners that the allegations of the auditors are in direct contradiction to their certificate, and that the filing of their report is a finality. The jurisdiction of the court is denied, unless an appeal is taken and an issue directed, as authorized by the act of assembly.

County auditors are clothed with extensive powers, to enable them to correctly audit, adjust, and settle the accounts of the several officers subject to their supervision. They can issue subpœnas to obtain the attendance of the officers, their executors and administrators, and of any other persons to be examined as witnesses. They can compel attendance by attachment to the same extent that the court of Common Pleas may do in cases pending before it, and also the production of all books, papers, and vouchers relating to such accounts as they are required to adjust and settle. Persons swearing falsely are liable to the pains and penalties of perjury, and witnesses refusing to testify may be committed to the county jail, by warrant of the auditors directed to the sheriff or any constable of the county. It is further provided that if any person in possession of books, vouchers, or papers relative to public accounts before auditors, shall refuse to produce the same, or if any officer, whose accounts are to be settled and adjusted by such auditors, shall refuse to attend or to submit to an examination, the auditors shall proceed by the examination of witnesses and other evidence to ascertain and settle, as near as may be, the amount of public money received by such officer, and its application to public purposes or otherwise. The report of the auditors shall be filed among the records of the court of Common Pleas of the county, and from the time of being so filed shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted either to the commonwealth or the county. An appeal may be made from such report by the county or any officer whose account is audited, to the court of Common Pleas of the same county, within sixty days after the same is filed, and thereupon the court shall direct an issue to be tried by a jury, upon whose verdict final judgment shall be entered, upon which execution may issue. Br. Purd. pp 300, 301.

Turning now to the decisions of the supreme court on these statutory powers of a board of county auditors, we find it held in the case of the Commissioners of Lycoming *v.* The County of Lycoming, 10 Wr. 496, that county commissioners are personally liable for moneys paid by their direction, which the county is not legally liable to pay; and that the auditors have the power, and it is their duty on settlement of the commissioners' accounts, to charge them with the amount of money misappropriated by them. The court says in that case: "There can be no doubt not only of the power, but of the duty of the auditors, to take notice of illegal disbursements of the public funds, and to charge the officer who is guilty of misappropriation. It is the only protection the people have against the illegal acts of those who have charge of their pecuniary interests; and the greater complaint is that the auditors too frequently omit their duty in this respect."

Public officers should be held to a strict and rigid accountability, and in no case should charges for services exceeding the compensation allowed by law, be sanctioned or tolerated. Godshalk *v.* Northampton County, 21 P. F. Smith 324. County auditors have all necessary judicial powers to determine the indebtedness to and from the officer whose accounts they audit. Blackmore *v.* The County of Allegheny, 1 P. F. S. 160.

That the auditors, in making the late settlement, did not call into exercise the powers vested in them, is not disputed ; and we assume that they were not aware of the extent of their legal right to investigate, and to hold to a personal accountability any officer who had misappropriated the public moneys. We have thought it important to call attention to the law upon the subject of the annual auditing of the accounts of the county officers, so that if negligence has existed, or mistakes have been made in the past, they may be avoided in the future.

The real question for our decision is, what is the effect of the filing of the auditors' report ? In Northampton Co. *v.* Yohe, 12 Harris 305, Judge Woodward, referring to the act of assembly which we have already quoted, says : "It seems to be an obvious deduction, that after a board of auditors have filed their report, they have no further power over it. It passes into the custody of a court of record, becomes a judgment, and is no more subject to the supervision and review of the auditors who made it, than a judgment entered on an award of arbitrators is liable to be overhauled by them."

In a later case, Blackmore *v.* Allegheny Co., *supra*, the auditors had failed to charge Blackmore, the treasurer, with one thousand dollars which he had received from a collector. The county brought suit to recover this money, after allowing the time for an appeal from the report of the auditors to go by. The supreme court decided that the county could not recover. The county auditors, says Judge Agnew, constitute "a special tribunal, with all necessary judicial powers to determine the indebtedness from or to the officer, and enforce collection in due course of law ; and this, under the provisions of the 13th section of the act of March 21, 1806, precludes a resort to an action at common law. The decision of this tribunal is also conclusive, and cannot be inquired into, either by the same tribunal at another time, or by a court of law, except in the manner provided, upon an appeal by the county or the officer. A long line of decisions have set this point at rest." Other decisions are to the effect, that the settlement of the auditors is final and conclusive in favor of the officer as well as against him, and that there is no prescribed form in which their reports shall be made, or the accounts stated, or the balance shown.

Now in view of the facts that the auditors have filed their report, certifying under their hands and seals that they audited, adjusted and settled the accounts of the treasurer and commissioners, and setting forth with particularity, that for two of the items in the accounts of the commissioners no vouchers were produced, it seems to us entirely clear that under the provisions of the act of assembly, and the decisions of the supreme

court, the only way in which the action of this court can be invoked is by an appeal from the account of the auditors as filed. The right of appeal is limited by law to the officer whose accounts are audited, and the county. It is likely, as has been stated, that the commissioners, who represent the county, will not appeal from the settlement that has been made of their accounts. This may show the necessity for such legislation as will extend the right, and enable the taxpayers to intervene between the treasury and the county officers. When in a court of justice, as in this case, the charge is made, on the one side, of a positive misappropriation, and on the other side, of an attempted misappropriation of the public moneys, the necessity of an intelligent and thorough investigation is very apparent. If the decision we are compelled to make in this case shall even seem to prevent such an investigation, it is to be regretted; but we think it a subject of still greater regret that the auditors, who possess such ample power of inquiring into the condition of the county finances, and into the official conduct of those to whose management they have been entrusted, let slip their opportunity. The parties held on the attachment must be discharged. In this conclusion my brother, Green, who sat with me on the argument, concurs.                                      •

*Hughes* and *Farquhar*, for auditors; *Lin. Bartholomew*, for commissioners.